# Forsyth *et al. versus* The North American Oil Company.

1. The defendants contracted to deliver to the plaintiffs a quantity of oil "to be paid for in lots as delivered, the delivery to be commenced immediately and pursued with all due diligence till completed." Both parties having taken great latitude in delivery and payment, without manifesting an intention to hold each other to a strict performance, *it was held* not to be error to instruct the jury that the defendants, upon a payment not being made on demand, could not rescind the contract without warning the plaintiffs of their intention to insist on a literal compliance.

2. If the contract had been previously performed literally and the plaintiffs had refused payment, the defendants might have rescinded the contract.

3. The refusal of the defendants to deliver the oil, excused the plaintiffs from tendering payment.

4. A contract for so many barrels of a liquid is presumed to be made on the basis of the statutory number of gallons in a barrel; but where there is evidence that barrels of a different content were in contemplation of the parties, it is proper to leave the question to the jury.

[Forsyth v. North American Oil Co.]

ERROR to the Court of Common Pleas of *Allegheny county*.

This was an action of assumpsit, commenced December 12th 1863, by the North American Coal Company against William H. Forsyth, Henry Forsyth and Jacob Forsyth, trading as Forsyth Brothers & Co., for failing to deliver a quantity of oil under the following contract:—

"Pittsburgh, July 16th 1863.

"Purchased of Forsyth Brothers & Co. four thousand (4000) barrels good merchantable crude oil, to be delivered, in their barrels, on board cars of Allegheny Valley Railroad, and paid for by us in lots as delivered, at the rate of twenty cents per gallon for the oil. The barrels to be returned. The oil to be pumped free from water, subject to our inspection, and gauged in the barrels. The delivery to be commenced immediately, and pursued with all due diligence until completed. The gravity of the oil to be 40° to 44°.

"Accepted.            FORSYTH BROTHERS & Co."

The plaintiffs' works were about twenty-eight miles from Pittsburgh, the defendants' about three miles; the counting-rooms of both parties were in the city, a few squares apart. There was evidence that an agent of the plaintiffs went to the defendants, the day after the contract, for oil, and on the two succeeding days, and got none; that he got some on the fourth day, and that frequently afterwards, when he demanded oil, received none, the defendants assigning various reasons, once that they were filling an order for Pennock & Co., occasionally for want of barrels, that they were short of hands, &c. The defendants, by their account furnished, delivered to the plaintiffs, between July 20th and September 10th 1863, twenty-five lots of oil, stated to be "2794 barrels—111,738½ gallons"—the first bill being as follows:—

"Pittsburgh, July 20th 1863.

"North Am. Oil Co.

"Bought of Forsyth Brothers & Co.
"131 Bbls. Crude Oil, as per certificate, 5263½ gal-
"lons, at 20c.     .     .     .     .     .     $1052.70."

The other bills were in the same form, but of different amounts. The defendants paid, on July 31st, August 4th, 17th, 21st and 31st 1863, in full, for all the oil delivered up to the last date. The bills were made out from the United States gauger's certificates, presented with the certificates to the plaintiffs' secretary, generally left with him to look over, and the money called for the next morning. On the 10th and 12th of September, four bills, amounting to $4058.60, and one amounting to $1038.80, were left at plaintiffs' office. The defendants' clerk called two or three times for the money and was told to come again, that

[Forsyth *v.* North American Oil Co.]

there were "no funds on hand." He afterwards met the secretary in the street, and asked him to go to the office and settle the bills. Upon the clerk insisting, the secretary refused; said he hadn't the money, and if he had he would not pay that day.

On the 14th September this notice was served on the secretary:—

"Pittsburgh, Sep. 14th 1863.

"George Ogden, Esq.,
          "Sec'y. North American Oil Co.

"Dear Sir:—

"As·you have, by your refusal to make payment when demanded, failed to comply with the conditions of our contract with you, dated July 16th last, and have thereby rescinded the same, we hereby give you notice that we shall not deliver you any more crude petroleum, under said contract.

"Yours, respectfully,
          "FORSYTH BROS. & CO."

The secretary on the same day went to defendants' office, and asked one of them "what he was going to do about filling the balance of the contract. He asked if I would pay the balance that we owed him. I said I would·not unless he would fill the balance of the contract. He said he would not. I remarked we would try to find a way to make him fill his contract." On the 14th of September the plaintiffs paid $4058.60 in full of all the bills but the last, and on the 15th they paid $1038.80 in full of the last bill: the secretary testified that he had not seen the last bill till after he had paid the others.

An agent of the plaintiffs testified:—

"I went out one day in September and asked Mr. Forsyth for oil, and he told me that I could get no more oil on the old contract. He pointed to two tanks in the yard, and said, if you find your own barrels and your own labor, you can have the oil. I told him I had to go to the office, in town, and report. He said the old contract was broken, and he would not give me any more oil on it. I went out twice afterwards, and made the same demand for oil. Got no oil on these occasions. He always said the same thing, that we could get no more oil on that contract. That oil was gone up 26 cents, and they were losing by it, and that the company had not stuck to their contract. He gave these as his reasons, and never gave me any more oil. The last times he never said he would give oil on the old contract, on any conditions."

Both the plaintiffs and defendants submitted a number of points. The part of the charge given sufficiently indicates the questions ruled, without giving the points and answers in detail.

[Forsyth v. North American Oil Co.]

In answer to two of the defendants' points, Mellon, A. J., charged:—

"It is for the jury to say, under the evidence, what barrels the parties in their contract had reference to; whether the statutory barrel, or barrels specifically adverted to and intended to be filled with oil ' as packages.' The evidence in regard to it is the written contract, interpreted in view of the subject-matter that it had reference to as barrels.

"There is evidence in the contract that some particular barrels used by the parties were intended to be used. This, and the interpretation given to this part of the contract by the parties themselves, so far as they performed the contract in the use of and estimation, as to the contents of barrels, is some evidence for the jury."

The court further charged:—

"To find for the plaintiffs you must be satisfied, by the evidence, that the plaintiffs were ready and willing, in good faith on their part, to perform the contract, so long as the defendants stood by it; that they were ready and willing to receive and pay for the oil in lots as delivered on the cars, according to the terms of the contract; and that they were to do so promptly, unless they have shown some valid excuse for tardiness. The alleged excuse for the want of promptness in payment, on plaintiffs' part, for lots delivered, is in the mode of performance adopted, or acquiesced in on both sides. Mutual convenience mostly regulates the manner of performance of contracts, where the contract contemplates subsequent acts to be done by both parties. Where the mode of performance discloses a relaxation of strict legal right, as, for instance, if the defendants should delay the delivery of the oil from time to time, or deliver in smaller lots or at longer intervals than the contract contemplated, and the vendors acquiesced in it without other manifestation than occasional complaint, and frequent demand for delivery, or upon delivery, the vendees neglected payment till dunned frequently by the vendor. Whilst such mode of performing a contract of the kind existed, neither party could suddenly throw himself on his legal rights, and declare himself off. This would be taking an undue advantage of the other, who might not have suspected any such intention. Some reasonable notice of such intention to rescind must be given under these circumstances; but whether such were the circumstances in the present case is for you. Under such circumstances, notice from the one party to the other that the contract was rescinded, amounted to nothing, as it afforded no time or opportunity for the party notified to regain his position. If, under the alleged circumstances, the notice had been to the effect that, not having paid for the last lots of oil delivered, no more would be delivered till they were paid for; and unless paid for soon, the

contract would be at an end, and the vendees had neglected such notice, the legal effect would be very different from that of a notice, to the effect that not having paid, the contract was rescinded and at an end. Yet the circumstances of neglect or inability to pay on the part of the vendees might be so gross, even where a lax mode of performance was acquiesced in, as to excuse the other party from any notice whatever of an intention to rescind, and might enable him to consider the contract as ended. It is only where there is a relaxed or indulgent mode of performance acquiesced in for. a time between the parties, and they are still going on in good faith and ability to fulfil the contract, that reasonable warning must be given before the contract can be annulled. How the facts are in the present case is entirely a question for the jury under the evidence."

The verdict was for the plaintiff for $3229.67.

The substance of the errors assigned is stated in the opinion of Judge Agnew.

*Shiras*, for plaintiff in error.

*MacConnell & Woods*, for defendants in error.

The opinion of the court was delivered, November 1st 1866, by AGNEW, J.—This case presents three principal questions, the decision of which will dispose of all the assignments of error. I shall not discuss them in the order of the argument, but will notice first the question of rescission, as it bears directly on that of readiness and willingness to comply with the contract after the attempted rescission.

The notice of rescission dated and delivered on the 14th of September 1863 was absolute, and was founded on an alleged refusal to pay on demand for the oil theretofore delivered. Had the contract been performed literally according to its strict terms before this time, and the plaintiff had actually refused payment, it could scarcely be denied that the defendants might have availed themselves of this refusal to escape from a losing contract, which they obviously desired to avoid. But the evidence shows that both parties had taken a great deal of latitude in its performance, without manifesting any intention to hold each other to a strict and literal performance. Although the delivery of the oil was to be commenced immediately by the defendants, they did not begin to deliver until several days had elapsed, and the plaintiffs had made four demands for it. After they began, the evidence is also clear that they did not deliver in the quantities required. by the plaintiffs, and were even guilty of a breach of their contract, by compelling them to wait for further delivery until they had filled an order for Pennock, Ball & Co.

The oil was to be paid for on delivery in their own barrels on

[Forsyth v. North American Oil Co.]

the cars, pumped free of water, subject to inspection, and gauged in the barrels; yet, though inspected by the plaintiffs' agent, the bills were not made out and gauger's certificates furnished on delivery; nor was the money demanded, the amount of the delivery being unknown until the bills were rendered and gauger's certificates produced. This was done at the office of the plaintiffs in this city, thirty miles distant from their works, thus necessitating the sending of the bills and certificates to the works for verification by the actual delivery. No doubt, practically, it was very inconvenient, perhaps scarcely possible, to perform the contract literally on either side, and therefore, by mutual consent, its terms were liberally interpreted in their practice. When the notice of rescission came it fell upon the plaintiffs like a sudden thunder-clap. It was founded too upon an alleged refusal to pay on demand, a matter more seeming than real. True, young Ogden, the secretary, had become petulant, in consequence of what he considered the annoying conduct of young Howard, and rashly said in the street he would not pay; but the real intention of the company itself to pay is shown by the actual payment on the same day the notice was served for all the oil known to be delivered; and on the following day for the remainder, the bills of which had escaped observation. This was followed by repeated demands for more oil under the contract, which the defendants absolutely refused to deliver.

Under these circumstances we discover no error in leaving it to the jury to determine the facts as to the mode of performance adopted by the parties, including the want of promptness in payment, alleged as the ground of rescission; and in instructing them that after a liberal indulgence allowed on both sides, the defendants could not suddenly rescind without a fair warning of their intention to insist upon a literal compliance with the contract in futuro. The contract then being still in force, as the finding of the jury on the facts evinces, the evidence to show the intention and readiness of the plaintiffs to comply with the contract was sufficient to go to the jury. Indeed, it is difficult to perceive how the evidence could be required to prove more; in the absence of any warning from the defendants of their dissatisfaction with the prior loose mode of performance, and of their intention to require a literal and strict performance thereafter. On the very day of the attempted rescission, and the day following, the plaintiffs paid up all they owed, and demanded fulfilment of the contract by the defendants. This was met by an unqualified refusal to deliver on the contract. Since, the demand was made at their works, and once at their office in this city, and as often peremptorily refused. The defendants did not call for immediate payment on delivery, but refused to deliver at all, on the ground

[Forsyth *v.* North American Oil Co.]

that the price of oil had risen, and they were losing money on this contract. It was clearly not a question of literal performance in future, but a denial of obligation altogether, and a refusal to stand on the contract for a reason found by the verdict to be insufficient. Not only was the contract one in which it was impossible for the plaintiffs to make a tender of money until delivery on board of the cars in quantities ascertained by gauging, so as to determine the sum to be tendered, but the refusal of the defendants to perform at all excused the tender if necessary. The court was therefore justified in refusing to charge, that the evidence was insufficient, and in submitting to the jury the question of the plaintiffs' willingness and readiness to pay and otherwise to comply with the terms of the contract. We think, also, that there was no error in leaving it to the jury to say under the evidence, to what barrels the contract had reference—whether the statutory or the customary. It is not denied, that a contract of parties for so many barrels of oil or other liquid, is to be presumed to be made upon the basis of the statutory number of gallons, if there be nothing on the face of the writing to show the contrary. But here the contract not only refers to barrels of good merchantable crude oil, but requires the oil to be delivered in the barrels of the defendants, and that these barrels shall be returned. The natural and evident interpretation of the contract is, that the barrels meant are the same in quantity as those which belonged to the defendants—for these are the barrels to be used in the delivery, to be gauged and to be returned. Now when nothing whatever in this writing indicates a difference between the barrels of purchase and those of delivery, it is asking us to go very far to say that the parties meant the purchase to be governed by the statutory number of gallons, while the delivery should be in the customary oil-barrels, and that these should be gauged and returned. It is very clear from the evidence, that the customary oil barrel contains forty gallons, and that these were the barrels used by the defendants in their business.

There was no error, therefore, in thus leaving the case to the jury.

Judgment affirmed.