# Price, Appellant, *v.* Beach.

*Contract—Sale—Time—Waiver.*

Where the parties to a contract of sale have dealt with the subject-matter of the contract without manifesting any intention to hold each other to a strict compliance with the provisions as to time of performance, they place themselves in a position from which neither can be permitted to recede and rescind the contract without warning to the other and a reasonable opportunity to perform.

Where a contract for the sale of hay provides that the purchaser shall furnish cars, and the hay is not delivered at the time mentioned in the contract, and the delay is the fault of both parties, and subsequently the seller notifies the plaintiff of his absolute refusal to deliver the hay, and thereafter sells it to another party, the purchaser is not required to do a useless thing and tender cars to receive the hay which the seller had absolutely refused to deliver.

*Contract—Sale— Evidence—Declaration.*

Where a seller who has waived the time provided by a contract of sale notifies the purchaser that he will not deliver the goods, he cannot thereafter manufacture testimony for himself by declaring to other parties that he did intend to make the delivery according to his contract.

Argued Feb. 11, 1902. Appeal, No. 7, Jan. T., 1902, by plaintiff, from judgment of C. P. Tioga Co., Sept. T., 1900, No. 479, on verdict for plaintiffs in case of Samuel B. Price and J. Potter Clark, Copartners, trading as Price & Clark, v. M. K. Beach. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit on a contract of sale. Before NILES, P. J.

The facts appear by the opinion of the Superior Court.

The court admitted under exception and objection evidence to the effect that the defendant after rescinding the contract told a witness that he was still keeping the hay for Davis. [17, 18]

Plaintiffs' points among others were as follows:

2. Even if the jury believe from the evidence that there was a time fixed by the contract of sale for the delivery of the hay, yet, if the jury further believe from the evidence that about two months subsequent to such time fixed for delivery, the defendant, without objection, permitted plaintiffs to press the hay as provided by the contract, such permission to press would be

regarded in law as a waiver of defendant's right to insist upon any particular time for the delivery of the hay, and he could not thereafter rescind the contract, because such time for delivery had passed, without notice to plaintiffs, and giving them an opportunity to take the hay within a reasonable time; and if he did so rescind under such circumstances he is liable in damages. *Answer :* The first part of this point states the law as we understand it. But if the plaintiffs had a reasonable time after the hay was pressed from the first of December to the last of January to insist on the performance of the contract and did not, then, as we have said to you already, in our general charge, it is for you to determine whether he was vigilant and had reasonable time to perform his part of the contract. [2]

3. If the jury believe from all the evidence in the case that there was indulgence on both sides and no disposition by either party to hold to any certain time for the fulfillment of the contract, the defendant could not rescind it without giving the plaintiffs reasonable notice and opportunity to take the hay; and if you believe the defendant failed to do this under such circumstances, and suddenly broke off the contract and notified plaintiffs they could not have the hay, defendant then and there became liable in damages for his breach of contract, such damages being what the jury may find under the evidence was the difference in the contract price and the market value of the hay at Davis Station at the time of the breach, to wit; January 27, 1900, and this should be in addition to whatever sum plaintiffs paid defendant for earnest money and the cost of pressing the hay; and your verdict should be accordingly. *Answer :* We affirm this point with reference to measure of damages. Counsel for the plaintiff have stated that as we understand it, and just as we have stated it to you. If you find that the defendant broke this contract, that he did not act in good faith with the plaintiffs, after having sold the hay to them and they had put $71.00 into the baling and pressing of it, without waiting a proper time for the other parties to rescind it, then he was the one that broke this contract and he would be liable to respond to the plaintiffs in damages to the difference between the price he was to pay and what the hay was worth at Davis Station at the time of the breach. [3]

The court charged in part as follows:

[Now, if Mr. Beach rescinded that contract, then the question for you to determine is whether Mr. Beach after waiting from September through November, when it was pressed until January 27, 1900, which is about two months after the hay was pressed, had waited a sufficient length of time for Davis to perform his contract.] [13]

[And it is for you to determine under all the evidence in this case, no time having been fixed between the parties when the hay was to be delivered, whether Mr. Beach had waited a sufficient length of time for Mr. Davis to come to the front, furnish the cars and give him notice to deliver and he pay for the hay. It was his business in our judgment to notify Mr. Beach when he was ready to receive that hay, in order to give Mr. Beach an opportunity to deliver this hay at Davis Station, which is about four miles distant from this farm.] [14]

[We say to you that if Mr. Beach had waited a sufficient length of time from the last of November until January 27, and there had been no movement on the part of Davis to carry out this contract, then Mr. Beach had a right to sell that hay.] [15]

[So, if you should find that Mr. Beach waited these two, three or four months, and Davis had failed to carry out this contract according to its letter and spirit, then Beach had the right to sell that hay, being responsible for the money and labor that Davis had put into it.] [16]

Verdict and judgment for plaintiffs for $86.27. Defendant appealed.

*Errors assigned* among others were (2, 3, 13–16) above instructions, quoting them.   (17, 18) Rulings on evidence, quoting the bill of exceptions.

*Andrew B. Dunsmore*, for appellants.—Where there has been indulgence on both sides, one party cannot suddenly rescind without notice to the other: Hatton v. Johnson, 83 Pa. 219; Forsyth v. North American Oil Co., 53 Pa. 168; Eberz v. Heisler, 12 Pa. Superior Ct. 392; Irvin v. Bleakley, 67 Pa. 24; Moore's Est., 22 Pa. C. C. Rep. 266.

A notice or other overt act by a party to a contract expressing his intention not to perform, is a renunciation which gives

the other party the right to treat the contract as broken, and sue for damages, without tendering performance on his part, or waiting until the time allowed by the contract for performance has elapsed: Hubbert v. Borden, 6 Wharton, 79; Arnold v. Blabon, 147 Pa. 372; Hocking v. Hamilton, 158 Pa. 107; Campbell v. Gates, 10 Pa. 483; Preston v. Finney, 2 W. & S. 53; Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264.

*S. F. Channell*, of *Watrous, Marsh & Channell*, for appellee, cited: Leaming v. Wise, 73 Pa. 173; Morgan v. McKee, 77 Pa. 231; Lancaster Bank v. Woodward, 18 Pa. 362; Kunkle v. Mitchell, 56 Pa. 100; Dwight v. Eckert, 117 Pa. 508; Hocking v. Hamilton, 158 Pa. 115; Baltimore Brick Co. v. Coyle, 18 Pa. Superior Ct. 190; Lester v. McDowell, 18 Pa. 91; Rugg & Bryan v. Moore, 110 Pa. 242.

OPINION BY W. D. PORTER, J., April 28, 1902:

In the latter part of September, 1899, the parties to this litigation entered into a contract for the sale and delivery by the defendant to the plaintiffs of a certain lot of hay then in the barns of the former. Under the terms of the contract the plaintiffs were to pay $9.00 per ton for the hay and to press it into bales at the barns of the defendant, who after that work was done was to deliver the hay at Davis station, where the plaintiffs were to furnish cars to receive it. The plaintiffs agreed to send the press to bale the hay the next week but one after the contract was made, to furnish the cars to receive the hay while the roads were good for hauling it to the station, and to pay for each carload when delivered. The plaintiffs did not bale the hay until early in December, but there was evidence including that of the defendant which would have warranted a finding that the defendant had acquiesced in the delay and that strict performance of the stipulation as to the time when this part of the contract was to be performed had been waived. The plaintiffs, with the acquiescence of the defendant, baled the hay at the barns of the defendant in December and it remained there without either party taking any further steps to complete the contract until January 27, 1900, when the defendant wrote to the plaintiffs that he would not let them have the hay. The plaintiffs wrote in reply insisting upon their right

to the hay under the contract; to this the defendant made no response and on March 6, 1900, sold and delivered the hay to another party.

The contract required the plaintiffs to furnish the cars and the defendant would not have been in default, because of a mere failure to deliver it, until notified by the plaintiffs that they were ready to receive: Kunkle v. Mitchell, 56 Pa. 100; Dwight v. Eckert, 117 Pa. 490; Rugg & Bryan v. Moore, 110 Pa. 242. The manner in which the parties had dealt with the subject-matter of the contract, without manifesting any intention to hold each other to a strict compliance with the provisions as to time of performance, had placed them in a position from which neither could be permitted to recede and rescind the contract without warning to the other and a reasonable opportunity to· perform: Forsyth v. North American Oil Company, 53 Pa. 168. The defendant having, after plaintiffs had failed to press the hay at the time agreed upon, elected to proceed as if the contract was still in force, could not rescind without first notifying the plaintiffs and giving them a reasonable time to perform. When the defendant notified the plaintiffs of his absolute refusal to deliver the hay, and by subsequently selling it put it out of his power to perform his contract, the plaintiffs were not required to do a useless thing and tender cars to receive the goods which the defendant· had absolutely refused to deliver: Campbell v. Gates, 10 Pa. 483; Zuck & Henry v. McClure & Company, 98 Pa. 541; Hocking v. Hamilton, 158 Pa. 107. The second, third, thirteenth, fourteenth, fifteenth and sixteenth specifications of error are sustained.

The declarations of the defendant, made after he had notified plaintiffs of his refusal to perform his contract, would have been competent evidence if they had been made to the plaintiffs; he might have promptly repented of his breach of contract and notified them of his willingness to perform. When, however, he had notified plaintiffs that he would not deliver the goods, he could not manufacture testimony for himself by declaring to other parties that he did intend to make the delivery according to his contract. His statements made to third parties, after the controversy had arisen and in the absence of the plaintiffs, were self-serving declarations and ought not to have been received in evidence. Had he notified the plaintiffs that he

would hold the hay for them until March 1, instead of making that statement to other parties, he would have had standing to rescind his contract.    The seventeenth and eighteenth speci-·fications of error are sustained.

The judgment is reversed and a venire facias de novo awarded.