# Seligman *v.* Beecher, Appellant.

*Contract—Sale—Monthly deliveries—Failure to fill orders—Failure to give orders—Delay in filling orders—Damages.*

Where a contract is to deliver 240 carloads of timber during a year in quantities of twenty carloads a month to be shipped upon orders given by the purchaser to the seller, to places designated in the orders, the purchaser is the actor in the transaction, and if he fails to give orders for a number of carloads, it is, prima facie, not necessary for the seller in order to save himself from default, to tender such carloads at the purchaser's residence or place of business. If, however, the seller expressly refuses to fill orders, which under the contract he was bound to fill, the purchaser is not under obligation to go through the idle form of giving orders in order to hold the seller for a breach of his contract to deliver 240 carloads during the year.

If without valid excuse and in spite of the purchaser's repeated remonstrances, the seller fails to fill orders that are given, this might, under some circumstances, justify the purchaser in withholding further orders, and still hold the plaintiff for a breach of the contract; but in

determining whether the seller will be liable on that ground, it is necessary to consider what the purchaser's conduct had been in giving and canceling orders. If in that particular there has been lax performance on his part, either in giving the full number of monthly orders, or in canceling without proper grounds, orders already given, he is not in a position to say that the seller's delay in filling, or even failure to fill, some of the orders that he gave was a breach of the contract, which, without more entitled him to damages for the nondelivery of the carloads for which he gave no orders. If the evidence relating to the purchaser's conduct is conflicting, the case is for the jury.

Where a contract is to deliver a certain number of carloads of lumber during a year on monthly deliveries, the seller cannot justify his failure to fill orders because of inability to get cars, and because of unfavorable weather conditions, where the evidence shows that at the time he was complaining that he could not get cars, he was shipping a great many cars to other people, and that the same was true in the months in which he claims he was prevented from filling the orders by bad weather.

Where a contract is to deliver a certain number of carloads of timber during a year by monthly deliveries, the seller cannot excuse a failure to fill orders promptly, because he was compelled to send the orders to a distant state, and have the timber cut, and because the orders in question would have to wait their turn when orders from other persons were ahead. The contract being to deliver and not to cut and deliver, it is the seller's duty to make such preparations and arrangements as will enable him to deliver within a reasonable time after the orders were given.

In a case involving damages for a breach of contract, it is error for the trial judge to state to the jury that "you can adopt such estimate of damages as you think proper," without instructing them as to the legal measure of damages that should guide them in determining what estimate it was proper for them to adopt.

Argued Dec. 2, 1907. Appeal, No. 237, Oct. T., 1906, by defendant, from judgment of C. P. Schuylkill Co., on verdict for plaintiff in case of S. G. Seligman, trading as Seligman & Co., v. J. W. Beecher. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit for goods sold and delivered. Before MARR, J. The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[If, after going over this evidence, you conclude that there

has been a breach of this contract, if you find the contract was that there were to be 240 cars of lumber shipped by Mr. Seligman to Mr. Beecher during the year 1905, and that the monthly order was to be twenty, that whilst the monthly order was not given for twenty, yet Mr. Beecher's explanation for not giving more is a proper one, and that his complaint is justified by the fact that the orders he did give Mr. Seligman were not filled, and therefore it was no use to give him more orders; that Mr. Beecher was complaining month after month to Mr. Seligman that his orders were not being filled, and that he would hold him responsible for any damages arising from that, if you find that is correct, and that there was neglect on the part of Mr. Seligman in 'filling the orders and shipping the timber, then you would be justified in saying that Mr. Seligman committed a breach of this contract, and the question then arises, what damages did Mr. Beecher suffer from that breach?] [1]

[Take all of this evidence into consideration as to whether or not there was a breach of this contract on the part of Mr. Seligman, in other words, whether Mr. Seligman was neglecting to ship the prop timber as ordered by Mr. Beecher in what is called a fair, reasonable time. The orders would go to Mr. Seligman in Tamaqua; Mr. Seligman would have to send them down to Virginia. Then it would take some time before this timber could be brought out of the woods and shipped. That is apparent to every person. The question is one for you, whether Mr. Seligman did ship this timber in a reasonable time after it was ordered, or whether he let it hang to such an extent that Mr. Beecher was compelled, in order to protect himself, to go into the market and buy timber from other people or bring the timber from his own tract of land. After Mr. Seligman got these orders it was his duty to exercise reasonable diligence in sending them immediately to his camp in Virginia, or wherever he obtained his timber, then it was his duty to see that the men there promptly filled the orders. That is what his contract called for. And in carrying out that duty it is proper that he should have filled them in what might be called fair, reasonable time. The defendant contends that he did not do that, that five, six, seven, eight weeks, some-

times two or three months would pass by and yet the orders
were not filled, that Mr. Seligman shipped just as he saw fit
and for reasons best known to himself.  This becomes a very
important question in this case, because if Mr. Seligman after
he received those orders did not fill them properly and shipped
the timber in what you may consider a fair, reasonable time, and
Mr. Beecher then was compelled, in order to keep his contracts
with the collieries, to go into the market and buy timber from
other people, or to go onto his own timber lands, wherever
they were, and bring timber from them, then there would be
a breach of this contract by Mr. Seligman, unless he gives some
fair, reasonable explanation why it was not done.  That is a
question for you entirely.] [2]

[It is for you to say if Mr. Seligman committed a breach of
his contract in supplying this lumber what damages Mr. Beecher
suffered; it is not for the court to say.  Take into consideration
the estimates given to you by the gentlemen on both sides.
It is for you to say which is correct.  If you find Mr. Beecher
has suffered damages by the negligence and refusal of Mr. Sel-
igman to carry out his contract, then how much is it?  Take
up these different estimates and you can adopt one or adopt
the other or you can adopt such estimate of the damages as
you think proper.] [3]

Verdict and judgment for plaintiff for $605.19.  Defendant
appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Guy E. Farquhar* and *Wesley K. Woodbury,* for appellant.—
The terms of the contract in this case being undisputed, the
law in relation to the duty of the parties to it is clearly de-
fined.  The contract was to deliver 240 carloads of timber at
the rate of twenty cars per month.  The only thing that was
left undetermined was the place of delivery.  Where the place
of delivery is not mentioned in the contract, but the time is
fixed, then the seller must be the actor and tender the articles
agreed to be sold: Barr v. Myers, 3 W. & S. 295.

The instruction as to damages was erroneous: Boden v. Irwin, 92 Pa. 345; Hoffman v. Railroad Co., 143 Pa. 503.

*R. H. Koch,* for appellee.

OPINION BY RICE, P. J., July 15, 1908:

According to the testimony of both parties, the plaintiff agreed to deliver, and the defendant agreed to take and pay for, 240 carloads of prop timber during the year 1905, in quantities of twenty carloads a month at $4.70 per ton for one kind, and $4.85 per ton for another kind. In this action of assumpsit the plaintiff sued to recover the contract price for a certain number of carloads, and the defendant pleaded as a set-off damages in consequence of the plaintiff's failure to deliver (1) a certain number of carloads for which he, the defendant, had given orders; (2) a certain number for which orders had not been given at the time the plaintiff brought suit. In the contract as thus far stated the place of delivery was not expressly determined. Therefore, it is contended by appellant's counsel upon the authority of Barr v. Myers, 3 W. & S. 295, it was incumbent on the plaintiff to tender the whole number of props within the time specified. It appears, however, by the course of dealing, by the plaintiff's testimony which was not contradicted, and by defendant's averment in his claim of set-off, that the timber was to be shipped upon orders, given by the defendant to the plaintiff, to the places designated in the orders. This being so, the defendant was to become the actor in the transaction; therefore, so far as the number of carloads for which he did not give orders during the year is concerned, it was, prima facie, not necessary for the plaintiff, in order to save himself from default, to tender them at defendant's residence or place of business. If, however, while still under obligation to fill the orders, up to the number of 240 carloads, which the defendant might give, the plaintiff expressly refused to go on with the contract, the defendant was not under obligation to go through the idle form of giving orders in order to hold the plaintiff for a breach of his contract to deliver 240 carloads during the year. So also, if without valid

excuse and in spite of the defendant's repeated remonstrances, the plaintiff failed to fill orders that were given, this might, under some circumstances, justify the defendant in withholding further orders, and still hold the plaintiff for a breach as above stated. But in determining whether the plaintiff would be liable upon that ground it would be necessary to consider what the defendant's conduct had been in giving and canceling orders. If in that particular there had been lax performance on his part—for example, unexcused failure from time to time to give the full number of monthly orders contemplated by the contract, or unwarranted cancellation of orders that were given—he was not in position to say that the plaintiff's delay in filling, or even failure to fill, some of the orders that he gave was a breach of the contract, which, without more, entitled him to damages for the nondelivery of the carloads for which he gave no orders. Many facts, depending upon oral testimony not always in harmony, entered into that question, and it would have been error for the court to withdraw it from the jury by binding direction that such breach was conclusively established. Upon this branch of the case we refer to the legal principles recognized in Forsyth v. North American Oil Co., 53 Pa. 168; Hazleton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301; Price v. Beach, 20 Pa. Superior Ct. 291; Cogley v. Browne, 11 W. N. C. 224; Portland Ice Co. v. Connor, 24 Pa. Superior Ct. 493.

But as to the orders that were given by the defendant, accepted by the plaintiff and not filled, a different question is presented. According to the plaintiff's testimony, the defendant ordered from time to time during the year, 154 carloads, and canceled orders for twenty-one carloads, thus leaving orders for 133 carloads to be accounted for, of which forty-three were unfilled. Two of the reasons given for not filling these orders and for delay in filling others were inability to get cars and unfavorable weather conditions; but, as pointed out by the learned judge below, it was shown by the plaintiff's own record, to which he testified, that when he was complaining that he could not get cars he was shipping a great many cars to other people, and that the same was true in the months

in which he claimed he was prevented from filling the orders by the bad weather. We think the learned judge should have instructed the jury that upon the plaintiff's own showing, these were not valid legal excuses for his noncompliance with his contract. Again, the defendant claimed that he was compelled to cancel some of the orders, and to obtain the timber elsewhere so as to comply with his contracts with other people, by the plaintiff's unreasonable delay in filling them. The learned judge's instructions, that the plaintiff was entitled to a reasonable time after the orders were given to deliver the timber to the persons and places designated therein, is not and cannot be seriously questioned; but it is contended that he erred in instructing the jury as to what could be considered by them in the determination of the question of reasonable time. Upon this subject the plaintiff testified: "after receiving the order we send the order south; it was then sent to our cutting ground and must take its rotation. If we have timber on the banks for other orders that came in previously, the timber on the banks must be moved into the cars before we can cut timber and put on the banks to fill these orders." Again he testified, "We have not got timber ready cut. We cut timber to order. It would not be possible to ship orders as fast as we get them." There are portions of the instructions quoted in the second assignment of error which might well be taken by the jury as justifying them in considering the time required by the plaintiff, not only to forward the orders to his employees in Virginia, but also to cut the timber after they received them, as entering into the question of reasonable time. The manifest objections to this view are: that the contract was to deliver, not to cut and deliver, twenty carloads of timber a month; it was not a term in the contract that it should be taken from the plaintiff's land and no other; the subject of the contract was not an article that could not be procured elsewhere; but, so far as appears, if the exigencies arising out of his contracts and dealings with other parties, or the time required to fell the trees and convert them into prop timber made it impossible for the plaintiff to ship the timber promptly from his own lands, he could have obtained

it in the market. Having undertaken to deliver twenty car-
loads a month as they were ordered, it was incumbent on him
to make such preparations and arrangements as would enable
him to comply with his contract; at least, the consequences
resulting from his failure so to do cannot be visited upon the
defendant. We are constrained to say, therefore, that there
was error in these two particulars in the judge's instructions
quoted in the second assignment of error. And we remark
in addition, that upon the question of breach we see no valid
ground upon which it can be claimed by the plaintiff, that,
so far as the orders accepted by him not canceled by the de-
fendant and unfilled were concerned, there was not a breach
of the contract. We are of opinion that to that extent the
court should have said to the jury there was a breach.

We are constrained also to the conclusion that the instruc-
tions complained of in the third assignment are open to criti-
cism upon the ground that they seem, or might be so taken
by the jury, to give them too wide a latitude in determining
the questions for decision, particularly the question of dam-
ages. Of course, as the counsel for appellee well says, it was
for the jury to determine what estimate of damages should
be adopted by them; but the conclusion of these instructions
with the remark "you can adopt such estimate of damages as
you think proper," unaccompanied by a clear statement of
the legal measure of damages that should guide them in de-
termining what estimate it was proper for them to adopt, had
a tendency to mislead.

The complaint that the court submitted to the jury to de-
termine whether there was a contract to deliver 240 carloads
during the year in quantities of twenty carloads a month, is
not well founded. There was no dispute as to these matters,
as the appellant's counsel well says, but viewing the charge as
a whole, in the light of the testimony and the manner in which
the case was tried, we are convinced that the jury could not
have understood that either the existence or these terms of
the contract were in dispute and that the determination of
the question was submitted to them. There is part of one
sentence of the charge quoted in the first assignment that,

taken by itself, might perhaps bear that construction, but by express words in other portions of the charge, and throughout the entire charge by implication that could not be misunderstood, the learned judge told the jury that there was no dispute as to these matters.

The second and third assignments of error are sustained, the judgment is reversed and a venire facias de novo awarded.