Robert P. Duff and Edward A. Kitzmiller, Partners trading as P. Duff & Sons, Appellants, *v.* Peoria Grape Sugar Company.

*Contract—Agreement to deliver goods—Stipulation as to strikes.*

Defendant agreed in writing to deliver a large quantity of glucose by equal weekly shipments during April and May, 1894. The contract contained the following clause: "Provided, that if we are obliged to suspend manufacturing, or are in any way prevented from delivering any portion of said goods by reason of fire or accident in our factory, or any strike, we shall not be liable to you in damages for nondelivery of such portion of the goods ordered." On May 1, a coal strike began throughout the whole coal region from which the defendant could procure coal, and continued until the last of June. During this period defendant was "obliged to suspend manufacturing." A correspondence arose between the parties, and on May 10 defendant wrote "We will fill all orders just as soon as we can get fuel to start up with which we hope will be sometime next week." On May 12, plaintiffs replied, "Although your letter of the 10th. is not a direct reply to ours of the 9th, yet we are glad to see that it is your intention to fill all orders as soon as you can get fuel to start up with. We will be glad to have prompt advice of your ability to make shipment." On July 2, defendant wrote plaintiffs that it thought it best to cancel plaintiffs' order. *Held,* (1) that the strike of the coal miners was such a strike as under the terms of the contract would excuse performance on the part of the defendant; (2) that the correspondence between the parties did not modify the agreement and extend the time of performance.

Argued Nov. 6, 1896. Appeal, No. 190, Oct., T., 1896, by plaintiffs, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1894, No. 203, dismissing exceptions to referee's report. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of referee, J. D. SHAFER, ESQ.

The referee's report was as follows:

### FINDINGS OF FACT.

1. On or before March 30, 1894, the defendant company was engaged in the manufacture of glucose in Peoria, Illinois, and the plaintiffs were manufacturer's agents or brokers doing busi-

ness in Pittsburg, Pa., and as such had negotiated a number of contracts for the sale of glucose for defendant.

2. On March 30, 1894, plaintiffs mailed an order to defendant for one thousand (1,000) barrels of glucose at $1.42½ per hundred pounds delivered in equal weekly shipments during April and May. On April 4, defendant mailed to plaintiffs an acceptance, repeating terms of the order, and adding other provisions, among them the following : " Provided, that if we are obliged to suspend manufacturing, or are in any way prevented from delivering any portion of said goods by reason of fire or accident in our factory, or any strike, we shall not be liable to you in damages for nondelivery of such portion of the goods ordered." This was accepted by plaintiffs and constituted the contract between the parties.

3. In pursuance of this contract defendant proceeded to ship glucose to plaintiffs but not quite in equal weekly shipments. The first shipment was on April 7. Regular weekly shipments thereafter during April and May would make eight shipments in all, four in April and four in May, each of which should have been one hundred and twenty-five barrels. During April it shipped only three hundred and fifty (350) barrels instead of five hundred (500).

4. On May 1, 1894, a coal strike began throughout the whole coal region from which the defendant could procure coal, and continued until after June 20, 1894, and during said time it was practically impossible for defendant to procure coal to run its factory, and by said strike the defendant was " obliged to suspend manufacturing " during said period, its factory not being adapted to the use of any other fuel.

5. Defendant on May 1 notified plaintiffs by telegraph of the strike and of the closing of the factory. A correspondence was carried on between the parties by mail in which, in the early part of May, the defendant says to plaintiffs that the strike seems to be growing, and that it does not look for the end of it in time to start before June 1, and that they should notify all their customers having orders with defendant to protect themselves, as prices might go up.

Plaintiffs' letters consist of inquiries as to prospects, and a suggestion of their interpretation of the contract. On May 10, 1894, defendant wrote plaintiffs, expressing the belief that the

strike would end soon and saying "We will fill all orders just as soon as we can get fuel to start up with, which we hope will be sometime next week."

On May 12, 1894, plaintiffs replied: "Although your letter of the 10th is not a direct reply to ours of the 9th, yet we are glad to see that it is your intention to fill all orders as soon as you can get fuel to start up with. We will be glad to have prompt advice of your ability to make shipment. Haworth & Dewhurst request us to have you ship their syrup as soon as possible. We have no doubt others will be after it very soon."

6. On July 2, 1894, defendant wrote plaintiffs that on account of the railroad strike it could not start the factory, and that it had orders on its books for over twenty thousand barrels, and could not get them out in any reasonable time, and that as the "strikes have necessarily cancelled all contracts," it thought it best to cancel plaintiffs' order.

7. On and before July 2, 1894, there was a strike on the railroads running from Peoria, which stopped the transportation of coal for some time.

8. That on May 31 and June 1, 1894, the market price of glucose was one dollar and seventy cents ($1.70) per hundred, and on July 2, 1894, the market price was one dollar and seventy-five cents ($1.75); on July 9, 1894, one dollar eighty-two and one-half cents ($1.82½); on July 16, 1890, $1.77½; on July 23, 1894, $1.77½; on July 30, 1894, $1.95, and that each barrel of glucose weighs six hundred and twenty pounds.

### CONCLUSIONS OF LAW.

1. It is contended by defendant that the occurrence of any strike in any place which prevented it from operating its works was sufficient to excuse performance under the contract. The plaintiffs claim that no strike not in the factory of defendant or among its employees could have that effect.

Plaintiffs' counsel invokes the rule that when a particular class of persons or things is spoken of and general words follow, these shall be held to refer to persons or things ejusdem generis, the effect of the general words being thus restricted.

It does not appear how this rule can be applied in this case. There are here no particular words followed by general words; the things which were to excuse performance were fire, acci-

dent, strike; but the first two were expressly confined to the factory, the last is expressly excepted from that restriction, and is expressly extended to all cases by the word " any." It is very evident also that the distinction is made according to the nature of subject-matter. Fire and accident, not at the factory, could not prevent the operation of it, whereas strikes might easily do so in various ways. The parties have used the most apt words they could find to express the agreement that fire or accident in the factory or a strike in or out of it, anywhere, if it prevented operations, should excuse performance.

2. It is contended by the plaintiffs that the defendant's letter of May 10 and the answer of May 12 modified the agreement and extended the time for fulfilment of the contract, and waived any right plaintiffs had to cancel the contract.

This letter was written before the time for delivery had passed, and under the expectation that the cause of delay, the strike, would be over before that time had passed. The defendant would then at least be bound to make up the weekly shipments in arrears when the strike began and to continue for the time after the strike ended till June 1. " We will fill all orders just as soon as we can get fuel to start up," might be so interpreted. It is more likely, however, that defendant thereby meant to say it would make the balance of the glucose ordered and not delivered at the price agreed on as fast as it could make it. It is contended by plaintiffs' counsel that the letter of May 12 amounted to an acceptance of an offer, and that these two letters constitute a new agreement as to time of delivery. It does not seem, however, that such was the intention of the parties, nor that plaintiffs would have considered themselves bound to take glucose after the time for delivery was passed unless they wished to. It is a mere expression of satisfaction that their customers as brokers are going to be supplied.

3. The contract was for future delivery of glucose during April and May at a fixed price, and in equal weekly shipments. It does not appear necessary to determine whether under the contract a strike of two weeks, for example, would excuse the delivery of two eighths of the one thousand (1,000) barrels, if the strike ended before the period of delivery. A similar contract was construed in Rowland v. Lehigh Coal Co., 28 Pa. 215. From the reasoning in that case it may be inferred that

they would be bound to make up during the time for delivery the amount not delivered, but in this case the strike lasted till after the time for delivery had fully passed.

4. The referee's conclusion therefore is that the defendant is bound to make good any damages sustained by plaintiffs by reason of nondelivery of the one hundred and fifty (150) barrels not delivered in April, and that the measure of damages under the circumstances is the difference in price at the end of May, and that it is not bound to answer in damages for the nondelivery of the remaining five hundred (500) barrels, the delivery of which was prevented by the coal strike. The price of glucose having risen 27½ cents per hundred pounds, at the end of May the difference in price on one hundred and fifty barrels is $255.75. This bears interest from June, 1894. The referee therefore finds and awards against the defendant and in favor of the plaintiffs in the sum of $286.04, with costs of suit.

Exceptions were filed by the plaintiffs to the report of the referee, upon which the court made the following order:

And now, September 21, 1896, after hearing upon exceptions to the report of the referee, said report, by agreement in writing of counsel for respective parties, is amended by adding the following to the finding of facts : " That Duff & Sons were empowered to purchase in their own behalf, and that the pur chase in dispute was a purchase for their own use and not as brokers." The other exceptions to said report are dismissed, and as thus amended said report is confirmed.

*Errors assigned* were in dismissing exceptions to referee's report.

*Edward B. Scull,* for appellants.—The court is not bound by the referee's findings of fact, since they are simply his conclusions drawn from the depositions and correspondence. There was no oral testimony : Phillips's App., 68 Pa. 130 ; Moyer's App., 77 Pa. 482 ; Hindman's App., 85 Pa. 466.

Facts in view of the existence of which an agreement was to be entered into may be considered in aid of its construction : Stapenhorst v. Wolff, 65 N. Y. 596 ; Berridge v. Glassey, 112 Pa. 442 ; Case v. Cushman, 3 W. & S. 544 ; Codding v. Wood, 112 Pa. 371 ; Hudson v. Whiting, 17 Ct. 490 ; U. S. v. Buffalo

Park, 16 Blatchford, 190; Butler's App., 73 Pa. 452; Swift v. Ins. Co., 122 Mass. 575; Brown v. Jones, 2 Gall. U. S. 477; Chitty on Contracts, sec. 1174.

A clause in wider terms following a specific enumeration will generally be restricted by interpretation to things of a like sort with those enumerated: Bishop on Contracts, sec. 409; Rowland v. Lehigh Nav. Co., 28 Pa. 215; McNish v. Reynolds, 95 Pa. 483; Carrier v. Dilworth, 59 Pa. 406; Wilgus v. Whitehead, 89 Pa. 131; Richardson v. Hooper, 13 Pick. 446; Wadsworth v. Thompson, 3 Gilm. (Ill.) 423; North v. Kizer, 72 Ill. 172; Holmes v. Doane, 9 Cush. 135; Wimson v. McGow, Hoffman Ch. 125; 1 Greenleaf on Evidence, sec. 304; Clement v. Durgin, 5 Greenleaf, 9; Robinson v. Bachelder, 4 N. H. 40; Forsyth v. N. A. Oil Co., 53 Pa. 168; Hazelton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301.

Acts including an assent of two minds are sufficient evidence of a contract: Gray v. Foster, 10 Watts, 280; Hamilton v. Lycoming Ins. Co., 5 Pa. 339.

*W. S. Dalzell*, for appellee.—Before rules of construction are necessary in deciding the meaning of a contract there must be an ambiguity, for when the meaning is clear and unambiguous there is nothing for construction to do: Shafer v. Senseman, 125 Pa. 310; Williamson v. McClure, 37 Pa. 402; Cumberland Navigation Co. v. Dialogue, 1 W. N. C. 475. Evidence is not needed to establish that which is so notorious to persons of ordinary intelligence that it either admits of no doubt or could at the moment be established by a profusion of undisputable testimony: Wharton on Evidence, sec. 330.

When a witness' character is unimpeached, and no attempt is made to contradict him, his single testimony is enough to prove a case: Ford v. Haskell, 32 Ct. 489.

Practical impossibility is equivalent in law to absolute impossibility. In matters of business a thing is said to be impossible when it is not practicable; and a thing is impracticable when it can only be done at an excessive or unreasonable cost: Leake on Contracts, 682; Smith v. Morris, 2 Brown's Chanc. 311; Moss v. Smith, 67 E. C. L. 94.

The whole correspondence or dealings of the parties must be looked at, and although from isolated parts thereof it might

seem that an agreement had been reached, yet if the whole correspondence or dealings show this not to have been the case there is no contract: Bristol etc., Bread Co. v. Maggs, L. R. 44 Chanc. Div. 616; Zuck & Henry v. McClure & Co., 98 Pa. 541; Hochster v. De la Tour, 2 El. & B. 678.

In order to consummate a contract there must be a request by one and an assent by the other; a mere affirmation or proposition is not enough. An offer becomes a contract only when it is met by an acceptance which corresponds with it entirely and adequately: 1 Pars. on Contracts, 476; Baxwer & Rule v. Bishop, 65 Ia. 582; Hutchison v. Bowker, 5 M. & W. 535.

PER CURIAM, November 11, 1896:

The justices before whom this case was heard being equally divided in opinion, it is ordered that the judgment of the court below stand affirmed.