## HEBRON MFG. CO. v. POWELL KNITTING CO.

(Circuit Court of Appeals, Third Circuit. July 1, 1909.)

No. 12.

**1. SALES (§ 420*)—REMEDIES OF BUYER—ACTION FOR BREACH OF CONTRACT—QUESTIONS FOR JURY.**

Where, under a contract for a sale of yarn to a knitting mill to be delivered in weekly shipments of a stated amount, the purchaser made payments semimonthly, instead of 10 days after each bill of lading, as required by the contract, and such payments were accepted by the seller and shipments continued, the seller could not cancel the contract because of such deviation from its terms without reasonable notice to the purchaser, giving an opportunity to comply strictly with such terms in the future, and, where the seller did cease shipments and cancel the contract, it was a question for the jury, in an action for its breach, whether such cancellation was justified.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1202; Dec. Dig. § 420.*]

**2. APPEAL AND ERROR (§ 1033*)—REVIEW—HARMLESS ERROR.**

The adoption by the court in its instructions of an erroneous measure of damages for breach of a contract is not ground for reversal by defendant, where the result was that the judgment against it was smaller than it would have been had the correct rule been stated.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Dec. Dig. § 1033.*]

**3. APPEAL AND ERROR (§ 263*)—NECESSITY FOR EXCEPTIONS—INSTRUCTIONS.**

It was not reversible error to assume the correctness of the testimony of witnesses as to the price of an article, without submitting the same to the jury, where such testimony was uncontradicted, and no exception was taken to the charge containing such assumption.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532; Dec. Dig. § 263.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Joseph H. Taulane and White, White & Taulane, for plaintiff in error.

W. Clarke Mason, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the lower court the Powell Knitting Company, herein called "plaintiff," recovered a verdict against the Hebron Manufacturing Company, herein called "defendant," for damages for alleged breach by the latter company of two contracts between them. Judgment was entered on the verdict, and defendant sued out this writ. The assignments of error raise three questions: First, was defendant justified in canceling the contracts? Second, did the court lay down the correct rule of damages? And, third, should not the credibility of witnesses as to prices have been submitted to the jury?

The plaintiff operated knitting mills at Philadelphia, and defendant manufactured hosiery yarn at Hebron, Mass. Plaintiff had pre-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

viously bought yarn from defendant, when on June 6, 1906, and September 29, 1906, it entered into the two contracts involved in this writ. By the June contract defendant sold plaintiff 20,000 pounds of hosiery yarn at 28½ cents per pound, deliveries 2,000 pounds weekly following completion of contract of April 24, 1906, f. o. b. Hebronville, Mass.; seller paying freight to Philadelphia; terms 10 days from each delivery. The contract of September 30th was of like tenor, amount 30,000 pounds, price 28 cents, deliveries 4,000 pounds weekly following completion of contract of June 6th. Shipments under the June contract began August 25, 1906, and ended October 26th, up to which time defendant delivered 14,000 pounds, and at which "latter date, for some reason, the deliveries," as stated in defendant's brief, "had been suspended." On November 28th defendant notified plaintiff it had canceled the contracts. It never delivered the remaining 36,000 pounds called for by the two contracts. From December to the middle of February, 1907, the period covered by the stipulated weekly deliveries, the price ranged from 33 to 35½ cents per pound. The plaintiff, as its needs required, bought 36,000 pounds during the contract term.

The underlying question in the case was whether the defendant was justified in canceling the contracts. That question was submitted to the jury, and no objection was taken to the language of submission. Unless the court was in error in denying defendant's point, which requested binding instructions, the verdict must therefore be accepted to establish the fact that defendant unwarrantably rescinded the contract. We turn then to the question whether the court should have given binding instructions.

Now the facts established by the plaintiff's proofs, for no witnesses were called by defendant, tended to prove: That plaintiff, instead of paying in 10 days after each weekly delivery at Hebronville, as the contract provided, had paid semimonthly; that, while defendant objected to the variations from the contract, it had nevertheless received such semimonthly payments and continued shipments; that the market was a rising one, and on October 26, 1906, as noted, defendant suspended shipments, and then (having made complaint of plaintiff's noncompliance with the times of payment provided in the contract) wrote:

"Now in regard to further shipping, when we advised you we were to stop shipping, we made another disposition of our yarn, but we can probably commence shipping again in two or three days. Our Mr. Knight insists, however, that we have an understanding that bills are to be paid within ten days of date of B-L, and in the event that you do not care to do this (which is according to contract), he prefers to cancel the contract. We await your advice in this matter, and in the event that you will agree to remit promptly according to our terms and that of contract, we will commence shipping as soon as possible."

The purchase of the yarn in question was made by Snyder, a broker in Philadelphia, on behalf of the plaintiff, and the sale by Childs, a broker in Boston, on behalf of the defendant. It appears Snyder communicated his desire to buy to Prendergast, a broker at Providence, R. I., with a representative at Boston, and the latter brought Childs and Snyder into communication. Prendergast's commissions

were paid by Childs. Evidence had been admitted on the trial for the purpose of showing Prendergast was the agent of defendant. On October 31st plaintiff replied to defendant's letter of October 26th:

"Referring to your remarks regarding payment of bills, we would state that so far as we are able we will remit for these bills within the ten days, provided of course that the yarn is in our mill, and if your representatives handle the stuff promptly at this end we see no reason at all why it should not be in our mill before the expiration of the ten days. We could not, however, agree to pay for the yarn before it is received. This we would consider altogether unjust. We believe Messrs. Prendergast & Co. have communicated with you and understand from them that you are to resume the shipment of our yarns."

On November 1st defendant, making no allusion to Prendergast, replied as follows:

"Referring to yours 31st will say, we propose to live strictly up to terms of contract, namely, cash in 10 days from date of shipment. Unless this condition is fully recognized by you we will cancel the contract. We note there are several bills now due, for which kindly remit with interest, and oblige."

There was evidence that on November 5th Childs, defendant's broker, informed defendant of the receipt by him through Prendergast of a telegram from Snyder, plaintiff's broker, dated November 1st, saying the plaintiff guaranteed to pay Hebron Company 10 days from date of shipment, and that defendant objected to confirmation by a broker and wanted it over plaintiff's own signature. Prendergast was so informed by Childs, but did not communicate this to plaintiff. Learning on November 31st that defendant would not ship, plaintiff wrote saying it had agreed to make settlement 10 days after shipment from mill, and was about writing, when Snyder had called and shown them a letter from Prendergast stating:

"The matter had been settled, and that there was no need of answer as you had agreed to continue shipments."

To this defendant replied:

"In ours of November 1st, we wrote you unless you complied with our terms we would cancel the trade. After waiting a suitable time and getting no reply, we sold the product of these spindles to another party, and our whole mill is sold for some months to come. We have wasted all the time and postage on this matter that we care to and consider the incident closed."

In view of this situation under the proofs, the question of cancellation was one for the jury. Not only were there facts to be ascertained and settled, but, as to the inferences to be drawn from such facts when ascertained, men might well differ. For example, a careful perusal of all the testimony leaves our mind in doubt as to when defendant actually rescinded this contract. On the one hand, we have the fact that on October 26th it stopped shipment of the weekly deliveries provided for by the contract. Did this indicate a rescission on that date, or a mere suspension of shipments until the question of payment was settled? If the latter, to what then did the statement then made, "We made another disposition of our yarn," refer, and how is it reconcilable with the statement made November

28th, when, in speaking of their letter of November 1st, defendant says:

"After waiting a suitable time and getting no reply, we sold the product of those spindles to another party."

In view of these statements, and of the fact that the weekly shipments were stopped October 26th, when did defendant rescind? In their letter of November 28th, they speak of waiting to hear in reference to terms of payment for a "suitable time"; but just when that suitable time expired, or precisely when the contract was rescinded, is nowhere shown. If defendant rescinded on October 26th, when they stopped shipments, or if, on receiving notice by the Snyder-Prendergast telegram on November 5th, they at once rescinded without waiting a reasonable time to get confirmation direct from the plaintiff, a jury might find such rescission was premature and unwarranted, for one could not thus abruptly change a course of payment the parties had been following, but must act reasonably in the way of notice and time in demanding a rigid adherence to the terms of the contract, for, as was said in Portland Ice Co. v. Conner, 32 Pa. Super. Ct. 428:

"The contract itself, as to the times of payment, was never either modified or abrogated. It was simply ignored; neither party choosing to stand upon his strict contractual rights. It was therefore in the power of either to determine, at any time, that the relations created by the contract should be resumed, and that thereafter a strict and literal compliance with the contractual obligations would be accorded and accepted; but, for manifest reasons, such a determination, arrived at by one party, could not be operated until after such fair and reasonable notice as would afford to the other party an opportunity to adapt himself to the new situation."

So, also, in Forsyth v. Oil Co., 53 Pa. 168, the Supreme Court say:

"Under these circumstances, we discover no error in leaving it to the jury to determine the facts as to the mode of performance adopted by the parties, including the want of promptness in payment, alleged as the ground of rescission; and, instructing them that after a liberal indulgence allowed on both sides, the defendant cannot suddenly rescind without a fair warning of their intention to insist upon a literal compliance with the contract in future."

For these and numerous other reasons, which an analysis of the testimony discloses, it will be seen that the question of rescission was for the jury. Its verdict therefore must be taken as settling that defendant was not warranted in rescinding when it did.

Such being the case, what was the proper measure of damages? Now, whatever may have been the date defendant attempted to rescind, it is clear the plaintiff was not bound to take any steps until after it learned of the rescission, which was the last of November, and the next weekly shipments due were December 5th, 12th, and 19th on the June contract, and December 26th, January 2d, 9th, 16th, 23d, 30th, and February 6th on the September one. In the settlement of these damages, two courses would seem open, both of which have the support of authority, namely, the difference between the contract price and the market price at the time when the several deliveries were to be made under the contracts. In support of this view, Shreve v. Brereton, 51 Pa. 175, Emory v. Salomon, 178 Mass.

582, 60 N. E. 377, and Missouri Co. v. Cochran (C. C.) 8 Fed. 463, may be referred to. On this basis the damages, with interest, were $2,583.35. The other view is the difference between the contract price and the market price at the time all deliveries were completed. In support of this view Duff v. Sugar Co., 178 Pa. 471, 35 Atl. 1134, and Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953, may be cited. Under this view the damages, with interest, were $2,690.10.

But the plaintiff actually went into the market as its needs required, and within the time limit of the contract bought so advantageously that its actual damages were, with interest, but $2,452.59. It follows therefore that defendant fared better than if the court had followed either of the courses indicated.

The assignment that the court should have submitted to the jury whether they believed the witnesses as to the price of the yarn is without merit. No exception was taken to the judge's charge in that regard to warrant such assignment. Moreover, there was no contradiction on that point, or is any allegation now made that any contradictory evidence could have been produced.

Finding no reversible error in this record, the judgment must be affirmed.