# Honesdale Ice Company *v.* Lake Lodore Improvement Company, Appellant.

*Contracts—Sales—Continuing sales—Waiver of terms—Payments— Estoppel.*

1. Where the terms of a contract of continuing sales as to payments have not been observed by either party notice of the seller's intention to require strict compliance with the terms of the contract as to future bills should precede rescission.

2. In an action for breach of a contract to furnish ice for a specified period it appeared that the contract contained a provision giving the defendant vendor the right to cancel the contract if the other party made default for a period of five days after any payment fell due. Payments were to be made not later than the tenth day of each month following shipments and in no event were they to be delayed longer than October 10, in each year. It was admitted that every monthly payment made during the year 1908 was more than five days overdue, yet such payments seemed to have been received by the defendant without protest or objection, and without any intimation that the time or method of payment was unsatisfactory. The last payment for ice

delivered in the year 1908 was made by the plaintiff on January 31, 1909. The defendant wrote a letter on February 10, 1909, stating that, exercising the option contained in the contract, it had terminated the agreement by reason of the delayed payments. The court submitted to the jury for determination as a matter of fact, whether or not the defendant, by repeatedly accepting, without objection, overdue payments, had waived its right to terminate the contract on account of delay. *Held,* no error.

*Contracts—Sales—Waiver of breaches—Estoppel.*

3. A party who proposes to insist upon a technical forfeiture of a contract upon certain grounds specified, is usually held to the case he has made. If he assumes to claim a forfeiture upon grounds specifically stated, he is deemed to have waived other breaches.

4. Where the vendor under a contract of continuing sales refuses to complete his contract and at the time avowedly bases his refusal upon the specific ground that payments had not been made as required, he is not entitled, at the trial of a suit to recover damages for such refusal to complete the contract, to attempt to base the right to rescind upon the alleged insolvency of the other party to the contract.

*Contract—Sales—Measure of damages.*

5. When contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, the general rule is, that the measure of damages is the difference between the contract price and the market value of the article at the time when and the place where it should have been delivered, with interest.

Argued Feb. 21, 1911. Appeal, No. 318, Jan. T., 1910, by defendant, from judgment of C. P. Wayne Co., Oct. T., 1909, No. 65, on verdict for plaintiff in case of The Honesdale Ice Company, to use of Russell T. Whitney, v. The Lake Lodore Improvement Co. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit for breach of a contract of sale. Before STEWART, J., specially presiding.

On February 1, 1909, the treasurer of the Honesdale Ice Company, wrote the defendant the following letter, which the defendant denied ever having received:

"HONESDALE, PA., Feb. 1, 1909.

"MR. JOHN H. JORDAN,
  "Lake Lodore Imp. Co.,
    "Scranton, Pa.
"Dear Sir:—

"This is to advise you that the property and business of The Honesdale Ice Company has this day been sold and transferred to Russell T. Whitney, of Honesdale, formerly manager of the Company. The contract between The Honesdale Ice Company and the Lake Lodore Improvement Company has been accordingly assigned to Mr. Whitney under authority therein contained. Mr. Whitney desires to continue the terms of the contract for the coming season. I enclose herewith check for $100, balance of account due the Lake Lodore Improvement Company.

"Very truly yours,
"HOMER GREENE,
"Treasurer."

On February 9, 1909, Mr. Greene, treasurer of the Honesdale Ice Company, wrote to the defendant complaining that winter ice (which was not included in the contract in this case) was not furnished to Mr. Whitney, and upon receipt of this letter the defendant replied as follows, on February 10, 1909:

"SCRANTON, PA., February 10, 1909.

"HOMER GREENE, ESQ.,
  "Honesdale, Pa.
"Dear Sir:—

"We just received your letter referring to the refusal of Mr. McNally to supply ice to Mr. Whitney, successor to the Honesdale Ice Company, at Honesdale.

"In reply wish to say that the reason for Mr. McNally's action was that the contract between the Lake Lodore Improvement Company and the Honesdale Ice Company was invalidated before any assignment of it was made to Mr. Whitney by your company. The essential conditions in reference to paying for the ice were not complied with

by your company, and exercising the option accorded to us under the terms of the contract, we have terminated and cancelled the same. Under the circumstances we do not feel obligated to furnish to Mr. Whitney any ice, but we shall be pleased to take the matter of a new contract up with him at any time he may desire, and discuss the terms and conditions he desires to be inserted therein.

"Trusting that this explanation is sufficient, and thanking you for the receipt of your check as final payment for the balance due us by your company, we are,

"Very truly yours,
"Lake Lodore Improvement Co.,
"by John H. Jordan,
"President."

The improvement company refusing to furnish ice to Mr. Whitney, suit was brought on November 24, 1909.

Verdict and judgment for plaintiff for $3,250. Defendant appealed.

*Errors assigned* were (1) inadequacy of charge; (2) refusal of binding instructions for defendant; (4) overruling motion of judgment n. o. v.; (5) refusal to admit evidence offered to show the importance to the wholesale vendor of ice of the terms in the contract requiring the full yearly settlement not later than October 10, of each year; (6–13) refusal to admit evidence offered to show that the Honesdale Ice Company was insolvent and on the point of going out of business in 1908 and in January, 1909, and that Mr. Whitney was then insolvent; (15) refusal of defendant's twelfth point as follows: "The letter of February 1st, 1909, Plaintiff's Exhibit No. 3, is not such a clear expression of the intention of the plaintiff to renew the contract for the year 1909 as would be binding upon the Honesdale Ice Company, or Russell T. Whitney, and even if you believe it was received by the Lake Lodore Improvement Company, it would not be binding upon the defendant, and your verdict therefore must be for the defendant;" (16) refusal of defendant's third point, as

follows: "In an action for breach of contract for supply of ice as in this case the measure of damages is the difference between the price agreed upon in the contract and the market price at the date of the breach, which in this case is February 10th, 1909."

*Chas. P. O'Malley*, of *Warren, Knapp & O'Malley*, with him *Frank P. Kimble* and *Reese H. Harris*, for appellant.— No waiver based on an estoppel exists in the case at bar: Waters v. Wolf, 2 Pa. Superior Ct. 200; Diehl v. Adams County Mut. Fire Ins. Co., 58 Pa. 443; Findeisen v. Fire Ins. Co., 57 Vt. 520; Johnston v. Yale, 19 La. Ann. 212; Royal v. Aultman & Taylor Co., 116 Ind. 424 (19 N. E. Repr. 202); Bird v. Hamilton, Walk. (Mich.) 361.

The mere acceptance of money due on a contract after the time when due is not of itself evidence of the waiver of any right under the contract: McCombs v. McKennan, 2 W. & S. 216; Penna. Trust Co. v. Bogert, 11 Kulp, 247; Moulton v. McOwen, 103 Mass. 587; Evans v. R. R. Co., 26 Ill. (16 Peck) 189; Dermott v. Jones, 64 U. S. 220.

Insolvency was material as bearing on the question of estoppel: Sensinger v. Boyer, 153 Pa. 628; Kline v. Mc-Candless, 139 Pa. 223.

The true measure of damages in this case was not the market value of ice at the time when ice might have been delivered under the contract, but the state of affairs at the date of the alleged breach of the contract by the defendant on February 10, 1909: Arnold v. Blabon, 147 Pa. 372.

*Homer Greene* and *Chas. A. McCarty*, for appellee.— The admitted acceptance by the defendant of the delayed payments without protest or warning was sufficient for the jury to find, as they did, a waiver of that provision of the contract giving a right of cancellation after five days' default: Cogley v. Browne, 11 W. N. C. 224; Goff-Kirby Coal Co. v. Marine Coal Co., 31 Pa. Superior Ct. 60; Price v. Beach, 20 Pa. Superior Ct. 291; Forsyth v. Oil Co., 53

Pa. 168; Portland Ice Co. v. Connor, 24 Pa. Superior Ct. 493; Hatton v. Johnson, 83 Pa. 219; Hazleton Coal Co. v. Buck Mountain Coal Co., 57 Pa. 301.

It was for the jury to say from the evidence whether or not there had been a waiver: Easton v. Jones, 193 Pa. 147.

OPINION BY MR. JUSTICE POTTER, July 6, 1911:

The contract between the parties in this case contained a provision, giving the defendant the right to cancel the contract, if the other party made default for a period of five days after any payment fell due. Payments were to be made not later than the tenth day of each month following the shipments, and in no event were they to be delayed longer than the tenth of October in each year. It is admitted that every monthly payment made during the year 1908 was more than five days overdue, yet they seem to have been received by the defendant without protest or objection, and without any intimation that the time or method of payment was unsatisfactory. The last payment for ice delivered in the year 1908, was made on January 31, 1909. The defendant, the improvement company, wrote a letter on February 10, 1909, stating that, exercising the option contained in the contract, it had terminated the agreement by reason of the delayed payments. The court below submitted to the jury for determination as a question of fact, whether or not the defendant, by repeatedly accepting without objection, overdue payments, had waived its right to terminate the contract on account of the delay. Counsel for appellant contend that the question of waiver in this case, was one of law for the court. But if so, the trial judge could only have instructed the jury that under the admitted facts, and the course of dealing between the parties, the defendant could not suddenly terminate the contract without warning of its intention thereafter to require payments in strict compliance with the terms of the agreement. The general rule is that a forfeiture for nonpayment of money, at an appointed day, is waived by the subse-

quent acceptance of payment in full, without objection upon that account. "If the promisor has made default in performance with respect to the time thereof, and the promisee subsequently permits or urges him to continue performance, or accepts performance thereafter, or accepts payments made in performance, or otherwise treats such contract as still in force, such breach is waived:" 3 Page on Contracts (1905): 1502. In Morgan v. McKee, 77 Pa. 228, it was said (p. 231) that it was the duty of parties to a contract for the sale and delivery of oil "to act promptly on the occurrence or discovery of the breach, and if they were guilty of undue delay, they must be regarded as having waived their right to rescind and elected to treat the contract as still subsisting." See also Forsyth v. Oil Co., 53 Pa. 168, and Portland Ice Co. v. Connor, 24 Pa. Superior Ct. 493, where Judge RICE carefully reviewed the authorities, and pointed out that where the terms of a contract as to payments have not been observed, notice of the seller's intention to require strict compliance with the terms of the contract, as to future bills, should precede rescission.

As the record here stands, the verdict of the jury must be accepted as establishing the fact that the defendant waived its right to cancel the contract upon the ground that the payments were not promptly made. Another question of fact, settled by the verdict, is that the contract was duly renewed for the year 1909. The ice company assigned, on February 1, 1909, all its interest in the contract to Russell T. Whitney, and on the same day, Homer Greene, treasurer of the company, notified the improvement company of the assignment, and of Mr. Whitney's desire to continue the contract for another season. With this letter a check for $100, balance due by the ice company since October 10, 1908, was inclosed. The receipt of this letter was denied by the improvement company, although the receipt of the check was admitted; but the verdict of the jury established the fact that it had been received. Mr. Whitney, as assignee of the contract, was

exercising a clear right to renew, if the contract was then in force; and the right to renew was not denied by defendant, except as it maintained that it had canceled the contract for delay in making payments. The sufficiency of the notice that Mr. Whitney was exercising the option of renewal given by the contract, can hardly be seriously questioned.

Counsel for appellant also complain that the trial judge excluded testimony as to the insolvency of the plaintiff company and its assignee Mr. Whitney. But this reason was not suggested at the time when the defendant sought to cancel the contract. Its action was at that time avowedly based upon the specific ground that the payments were not made as required. This was the only reason assigned, at the time, and it was too late, we think, at the trial to attempt to base the right to rescind upon the alleged insolvency of the assignee of the contract. "A refusal to perform on the ground of a specific breach assigned by the party so refusing as a ground for such refusal, is a waiver of other breaches which are known to him or brought to his notice:" 3 Page on Contracts (1905), sec. 1504. "A party who proposes to insist upon a technical forfeiture of a contract upon certain grounds specified, is usually held to the case he has made. If he assumes to claim a forfeiture upon grounds specifically stated, he is deemed to have waived other breaches:" Wright v. Land Co., 100 Wis. 269 (274). "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law:" Railway Co. v. McCarthy, 96 U. S. 258 (267).

A familiar application of this principle is often found in suits upon contracts of insurance. It has been generally held where a company sets up one ground of forfeiture as a defense to an action on a policy, and denies liability

on this ground alone, all other known grounds of forfeiture are thereby waived: 3 Cooley on Insurance, 2680. We said, in Freedman v. Fire Assn. of Philada., 168 Pa. 249: "The trend of our decisions has been to hold insurance companies to good faith and frankness in not concealing the ground of defense and thus misleading the insured to his disadvantage. They may remain silent except when it is their duty to speak and the failure to do so would operate as an estoppel; but having specified a ground of defense, very slight evidence has been held sufficient to establish a waiver as to other grounds." In the present case we do not find in the record any intimation until after suit was brought, that the refusal by the defendant to carry out the contract was based upon any other reason than that stated in the letter of February 10. Having based its attempt to rescind on the allegation of a specific breach, appellant is now precluded under the authorities from setting up a different ground for its action. The offers of evidence to show insolvency were therefore immaterial, and were properly excluded.

As to the measure of damages, if there was a breach of the contract it was a continuing one, or a succession of breaches during the four months in which the defendant was bound to deliver ice. It is agreed that the correct measure was the difference between the contract price for the ice, and the market price. But appellant contended that the market price was to be ascertained as of February 10, 1909, the date when appellant gave notice that it regarded the contract as at an end. The court below held that the price at the time when the ice was to be delivered, was to be taken as the market price. He was correct in so holding. This court said, in White v. Tompkins, 52 Pa. 363: "On failure to deliver specific articles contracted for, the damages are generally the difference between the contract price and the market price at the time for delivery." A statement of the general rule is thus set out in 2 Sedgwick on Damages (8th ed.), sec. 734: "When contracts for the sale of chattels are broken

by the vendor failing to deliver the property according to the terms of the bargain, it seems to be well settled as a general rule, both in England and the United States, that the measure of damages is the difference between the contract price and the market value of the article at the time when and the place where it should have been delivered, with interest." In a late decision of this court, in Morris v. Supplee, 208 Pa. 253, Mr. Chief Justice MITCHELL pointed out that in case of refusal to deliver goods by the vendor, the buyer has the right to wait until the contract time for delivery has passed, and then purchase at the market price, holding the seller liable for any loss. As he there says, "the buyer is entitled to have the goods at the stipulated time of delivery." This would be particularly true of a perishable commodity like ice, needed for summer delivery. "The buyer is not bound to supply himself before the contract date of delivery, even on a rising market." These authorities fully sustain the position taken by the trial judge as to the proper measure of damages to be applied in this case.

We see nothing in any of the assignments of error which requires further consideration. They are overruled, and the judgment is affirmed.