### WOOD v. W. E. SEXTON CO.

(Circuit Court of Appeals, Third Circuit. September 10, 1921.)

No. 2686.

1. Trial ⊙⟝284—Failure to call attention to error in instructions waives the error.

Where it is obvious from the remarks of the trial judge at the close of his charge that he believes he has substantially covered the requests to the satisfaction of the litigants, though in fact he has inadvertently overlooked some of them, and an opportunity is given to bring to his attention the omissions or dissatisfaction, failure to take advantage of this opportunity waives the error.

2. Trial ⊙⟝278—Objections to charge must be specific.

Objections to the charge of the trial judge must be specifically made, in order that he may be given an opportunity to correct errors and omissions, before the same are made the basis of proceedings in error.

3. Sales ⊙⟝416(2)—Evidence held immaterial in action for breach of contract.

In an action for breach of contract for delivery of iron pipe, evidence to show that when the contract was made the market price was higher than the contract price held immaterial on the question of the measure of damages.

4. Sales ⊙⟝174—Refusal of seller to perform held not justified by delay of buyer in making payments.

Where plaintiff had been buying goods from defendant for a number of years, and making payments from time to time on its general account, which had never been settled or stated, failure to make payments within the time required by the terms of a contract did not justify defendant in refusing to make further shipments thereunder without previous notice to plaintiff.

⊙⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Sales ☞418(7)—Offer by seller to fill contract at advanced price held not to limit buyer's damages for breach.**

In an action for breach of contract to sell and deliver iron pipe, an offer by defendant to fill the contract at an advanced price could not limit plaintiff's damages to the difference between the contract price and the price named in such offer, where such offer was not made unconditionally, but required, expressly or impliedly, that plaintiff relinquish its rights to damages under the contract in accepting the offer.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by the W. E. Sexton Company against Walter Wood, trading as R. D. Wood & Co. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles B. Finley, of Philadelphia, Pa., for plaintiff in error.

Ralph B. Evans, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This suit arose out of an alleged breach of a contract for 1,000 tons of pipe. On October 21, 1916, the W. E. Sexton Company, of Mineola, N. Y., placed an "order for one thousand tons 'class B' pipe immediate and winter shipments, price twenty-nine dollars six-inch and larger; four-inch, thirty-two dollars"—with Walter Wood, trading as R. D. Wood & Co., of Philadelphia. Two days later the defendant accepted the order. In January, 1917, the plaintiff ordered approximately 353 tons of the 1,000, which was eventually delivered; but the rest had not been delivered on March 14, 1917, when a telephone conversation was held between the parties, and Wood asked the Sexton Company to send the specifications for the remaining tonnage. They were sent on that day, but at this time the market price had risen to about $20 a ton above the contract price. Then passed between them a number of letters. In these the plaintiff sought to enforce, and the defendant to avoid, the contract. They were diplomatically maneuvering for the best terms of adjustment, and, if that failed, then for an advantageous position for the coming litigation. Finally, on May 30, 1917, the defendant definitely refused to fill the balance of the contract. Thereupon the plaintiff went into the open market and purchased the pipe, and brought suit for $15,527.38, with interest, which was the difference of $24 per ton between the market price at that time and the contract price, on the 646.97 tons still undelivered.

The jury rendered a verdict for the full amount of the demand, and the defendant sued out a writ of error to this court, based upon 12 assignments. The first, second, and twelfth assignments are general and formal, and do not require consideration. The other nine may be reduced to the following propositions:

I. The court erred in sustaining objections to questions designed to establish the market price of pipe in October, 1916, when the contract was made.

II. The court erred in refusing to affirm the defendant's "points" for charge, which were in substance as follows:

1. The defendant was justified in his refusal to ship the remaining pipe because the plaintiff failed (1) to make payment on time of other bills past due; (2) to furnish in time specifications in compliance with the requirement of the trade meaning of the words "winter shipments."

2. The measure of damages adopted was illegal, because the plaintiff did not avail itself of the lowest price offered, but instead bought in the open market at a higher price.

3. The contract was breached, if at all, on March 16, 1917, and the market price of pipe must be fixed as of that date, and not at the higher price on May 30, 1917.

[1] These propositions, with the exception of the first, might be disposed of upon technical grounds. At the conclusion of the charge the trial judge said:

"There have been a number of points submitted to me. So far as affirmed in the general charge, they are affirmed; so far as not affirmed in the general charge, they are denied."

The defendant did not take an exception to the refusal to take up his points seriatim and affirm them, but left the trial judge under the impression that he had satisfactorily covered the points. Where it is obvious from the remarks of the trial judge at the close of his charge that he believes he has substantially covered the requests or "points" to the satisfaction of the litigants, though as a matter of fact he has inadvertently overlooked some of them, and an opportunity is given to bring to his attention the omissions or dissatisfaction, failure to take advantage of this opportunity waives the error. Pennsylvania Railroad Co. v. Minds et al., trading as Bulsh Coal Co., 250 U. S. 368, 373, 39 Sup. Ct. 531, 63 L. Ed. 1039.

[2] Objections to the charge of the trial judge must be specifically made, in order that he may be given an opportunity to correct errors and omissions before the same are made the basis of proceedings in error. This is the only course fair to the court. McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162; Jacobs v. Southern Railway Co., 241 U. S. 229, 239, 36 Sup. Ct. 588, 60 L. Ed. 970; Guerini Stone Co. v. Carlin Construction Co., 248 U. S. 334, 338, 39 Sup. Ct. 102, 63 L. Ed. 275. Under the rules of this court, however, notwithstanding the failure of counsel to take advantage of the opportunity to have the trial judge pass on his points individually, a case involving a substantial amount should perhaps be considered upon its merits.

[3] The defendant sought to establish that the actual market price in October, 1916, was higher than the contract price, in order to show that there were special inducements or reasons which he had for entering into the contract. But, whatever his motives or reasons for entering into the contract were, they have no bearing upon the issue. Whether the market price was higher or lower than the contract price is immaterial. The parties fixed the price, and if the defendant is liable for damages the measure thereof is the difference between the contract price and the market price at the time of the breach. The establishment, therefore, of the market price at the time of the execu-

tion of the contract, and the reasons of the defendant for entering into it, were properly excluded.

[4] The defendant contends that, if there was a breach of the contract, it occurred on March 16, 1916, when he "fully, definitely, and clearly" refused to ship the balance of the pipe, and that his reason for so doing was the failure of the plaintiff to make long overdue payments. However, the defendant's letters of the 16th and 19th of March do not contain a statement or hint that he had refused or would refuse to ship the balance of the pipe because of payments then past due on pipe already shipped. The contract does not fix the time of payment, but the plaintiff admits that in the absence of a definite time fixed in the contract it is understood in the trade that payment will be made within 30 days after delivery. The defendant could have insisted on payment within that time, unless he had waived his rights as to the time of payment by his course of dealing with the plaintiff. If he had done so, it was necessary for him to notify plaintiff that thereafter payments must be made in accordance with the terms of the contract and the law, before he could terminate the contract and refuse to ship the remainder of the pipe on the ground of nonpayment of overdue bills. Portland Ice Co. v. Connor, 32 Pa. Super. Ct. 428; Honesdale Ice Co. v. Lake Lodore Improvement Co., 232 Pa. 293, 81 Atl. 306; Hebron Manufacturing Co. v. Powell Knitting Co., 171 Fed. 817, 96 C. C. A. 489; Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. There was no evidence that the defendant had given such notice. The learned trial judge fully charged the jury on this point.

The plaintiff, however, had been dealing with the defendant for several years, and the account between them had never been definitely stated and a balance struck. Defendant made shipments to the plaintiff, on which payments had been made from time to time, which defendant credited to the general account of the plaintiff. Over some of these shipments, however, there were controversies as to the exact amount due. Deductions were demanded by the plaintiff. This was the case on March 14, 1916. The plaintiff had asked a number of times that these disputes be adjusted, and adjustment was finally made on April 17, 1916, and the account was paid in full. The evidence cannot be read without reaching the conclusion that the failure of the defendant to ship the balance of the pipe upon receiving the specifications on or about March 14, 1917, was due to the increase in the price of pipe of about $20 per ton at that time, and that the refusal to ship pipe because payments then due had not been made was an afterthought.

The main defense upon which defendant principally relied is the meaning to be given to the words "winter shipments" in the trade. The defendant contended in his affidavit of defense that "winter shipments" in the trade meant while the ground was frozen too deep for digging, and not the calendar ending of winter on March 21st. He sought to show at the trial, however, that specifications on orders must be given in time for the seller to manufacture and ship the pipe while the ground was frozen; that it would require some four or five weeks to manufacture the balance of this pipe, and, as the specifications were not sent in

by plaintiff until March 14, 1917, there was not sufficient time to manufacture and ship the pipe within the time required by the contract. On the other hand, the plaintiff testified that it was given to understand by the defendant that he had on hand large quantities of the kinds of pipe ordered. Plaintiff, therefore, charged as a fact that defendant did have more than enough of such pipe on hand and that it was not necessary to manufacture any whatever to fill the order. This was nowhere denied. The court went into this particular phase of the case at length in his charge, which clearly covered the "points," and it was not error thereafter to refuse to charge them in the language of the defendant.

[5] On March 16, 1917, the defendant wrote the plaintiff in reply to the letter of March 14, in which he alleged that he would fill the balance of the order, the six-inch and the eight-inch pipe at $39 per ton, and the four-inch at $42 per ton, which was $10 above the contract price, but $10 lower than the market price at that time. Defendant contends that, even if liable, the measure of damages is the difference between the contract price and the above-quoted price, which would be $10, and not $24, per ton, which plaintiff paid on May 30, 1917. When a defendant has failed to perform his contract, it is the duty of the plaintiff to use all reasonable diligence to reduce the damages, and to buy the goods, to have been furnished under the contract, at the lowest possible price. If he does not do so, and purchases at a higher price, the measure of damages will be the difference between the contract price and the lower price for which he could have bought with reasonable diligence. The Oregon, 55 Fed. 668, 673, 5 C. C. A. 229; 2 Sedg. Dam. (8th Ed.) § 482.

The facts of the instant case, however, do not bring it within this rule. If the offer had been made unconditionally, and did not require, expressly or impliedly, that plaintiff relinquish its rights to damages under the contract in accepting the offer, it would be limited to the difference of $10 per ton between the contract price and the price offered. But the very ground on which this reduction in price was offered involved the surrender by the plaintiff of its rights under the contract. It was not compelled to give up anything it had under the contract, and the measure of damages is therefore not limited to the difference between the contract price and the price offered on March 16. There is no evidence that the price paid by the plaintiff was not then the market price. Therefore, as charged by the court, the measure of damages for which the defendant is liable, if liable for any, was the difference between the market price at the time of the breach and the contract price.

Defendant claims that the contract was breached by him, if at all, on March 16, 1917, when he definitely refused to deliver the balance of the pipe under the contract, and that under any view of the case the measure of damages is the difference between the contract price and the market price of that date, and not the higher market price of May 30, 1917. There was, however, not a definite refusal, as above noted, of the defendant to ship the iron covered by the contract until May

30, 1917. Both parties presented their evidence as to the time of the breach to the court and jury. The court charged that the plaintiff is entitled to the difference, if entitled to anything, between the contract price and the market price at the time of the breach, or within such a reasonable time thereafter as the plaintiff could have gone into the open market and have supplied itself. In reaching the verdict upon the evidence and instructions of the court, the jury determined the time of the breach, and there was evidence to support its finding. Consequently the defendant is bound thereby.

The judgment of the District Court will therefore be affirmed.