## BANK OF TAIWAN, Limited, v. UNION NAT. BANK OF PHILADELPHIA.

(Circuit Court of Appeals, Third Circuit. August 26, 1924. Rehearing Denied Oct. 16, 1924.)

### No. 3142.

1. **Banks and banking ☞191—Bank's letter of credit held to define its liability and render erroneous consideration of contract aside from it.**

In action by foreign bank on draft drawn in its favor by foreign consignor of goods against American bank which had issued an irrevocable letter of credit to consignee, based on defendant's refusal to honor the draft, *held*, the letter of credit limited the undertaking and obligations of defendant, and contract between consignor and consignee was improperly admitted.

2. **Banks and banking ☞191—Grounding refusal to pay draft on particular ground constitutes waiver of all others.**

Bank, grounding its refusal to pay draft drawn under letter of credit on one ground, must be held to have waived all others.

3. **Banks and banking ☞191 — Defense that plaintiff is not bona fide holder not available in action on draft, where nonpayment was grounded on another theory.**

Where a bank, having issued a letter of credit to a consignee which required draft to be accompanied by bills of lading dated during September or October, 1920, refused payment of a draft on sole ground that shipment had not been made as required, it cannot subsequently defend on ground that plaintiff was not bona fide holder for value of the draft.

4. **Banks and banking ☞191 — That actual transportation not commenced as indicated by bill of lading accompanying draft is not good defense unless holder knew thereof.**

A bank, having issued a letter of credit to a consignee of goods which required drafts to be accompanied by bills of lading dated during September or October, 1920, may not refuse payment on ground that bill of lading, dated October 30, 1920, did not truthfully represent date of beginning of actual transportation, unless plaintiff, holder of draft, knew such fact when it acquired it.

5. **Banks and banking ☞191—Letter of credit held complied with as to "bill of lading"; "shipment."**

Letter of credit, requiring drafts to be accompanied by bills of lading "dated during September or October, 1920, * * * for shipment to P.," was complied with, if goods were delivered to transportation company for transportation on October 30, when bills of lading were dated, though vessel did not clear on that date, as "shipment" does not mean clearance, and "bill of lading" is acknowledgment of receipt of goods for carriage on terms stated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading; Shipment.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the Bank of Taiwan, Limited, against the Union National Bank of Philadelphia. Judgment for defendant, and

1 F.(2d)—5

plaintiff brings error. Reversed, and new trial granted.

Frederic L. Clark and John Franklin Shields, both of Philadelphia, Pa. (Franklin H. Mills, of New York City, of counsel), for plaintiff in error.

John Arthur Brown, Henry Spalding, and Henry P. Brown, all of Philadelphia, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

DAVIS, Circuit Judge. The Gorgas-Pierie Company of Philadelphia, hereafter called the Gorgas Company, entered into a contract on August 7, 1920, with the Nanyo Boyeki Kaisha, Limited, of Tokio, Japan, hereafter called the Nanyo Company, for the purchase of 300 tons of copra at 7⅞ cents per pound, to be shipped "from the Orient by steamer during September or October, 1920." The contract provided that the Gorgas Company should furnish a confirmed irrevocable banker's letter of credit for the full amount of the contract in favor of Nanyo Company, payable 95 per cent. of the value of the shipping weight against invoice, or certificate of origin, insurance policy, or certificate including war risk, and balance on verification of weights in Philadelphia. Pursuant to this provision, the Union National Bank of Philadelphia issued its letter of credit on August 13, 1920, to the Nanyo Company for $47,250.00, providing, among other things, that "drafts to be accompanied by invoice, consular invoice, and full set of bills of lading to be dated during September or October, 1920, in an Oriental port, for shipment to Philadelphia." On the side of the letter of credit was the statement that "the Union National Bank of Philadelphia hereby agrees with the drawers, indorsers, and bona fide holders of bills, drawn in compliance with the terms of this credit, that the same shall be duly honored on presentation to us."

Upon the authority of that letter of credit, the Nanyo Company shipped the copra by bill of lading dated "October 30, 1920," in an Oriental port and drew its draft in favor of the Bank of Taiwan, Limited, on the Union National Bank for $42,843.13. This draft, together with the letter of credit, bills of lading, and the other documents required, were, on November 26, 1920, presented to the defendant for payment. This was refused on the ground that the copra was not "shipped in September or October, 1920." By agreement of the parties, the

copra was sold, without prejudice to their rights, and the proceeds of the sale were applied to the original purchase price and suit was brought for the difference which, after some adjustments, amounted to $18,086.83.

At the conclusion of the testimony, a verdict was directed for the plaintiff. Defendant filed a motion for a new trial and after consideration the learned trial judge concluded that the question of whether or not plaintiff was a bona fide holder of the draft for value should have been submitted to the jury and so granted a new trial. On the second trial, the jury rendered a verdict for the defendant, and the case is here on plaintiff's writ of error based on the admission and rejection of evidence.

The first three assignments of error relate to the admission in evidence of the contract of purchase and sale of the copra between the Gorgas Company and Nanyo Company, to the testimony relating to it, and to the failure of the Nanyo Company to give to the Gorgas Company declaration of steamer and routing at the time of shipment, as called for by the contract, but not mentioned in the letter of credit.

[1] The relations between the parties to this litigation grew out of the letter of credit, and they should be confined to it. It contains the limits of their undertaking, and their obligations should be measured by its provisions. It constituted the contract between them, and so far as this litigation is concerned it is independent of the contract between the buyer and seller. American Steel Co. v. Irving National Bank (C. C. A.) 266 Fed. 41; Bank of Taiwan v. Gorgas-Pierie Mfg. Co. (C. C. A.) 273 Fed. 660; Second National Bank v. Columbia Trust Co. (C. C. A.) 288 Fed. 18, 30 A. L. R. 1299; Banco Nacional Ultramarino v. First National Bank (D. C.) 289 Fed. 169; Frey & Sons, Incorporated, v. Sherburne. Co. and City National Bank, 193 App. Div. 849, 184 N. Y. Supp. 661; Lamborn v. Lake Shore Banking & Trust Co., 196 App. Div. 504, 188 N. Y. Supp. 162.

The terms of the contract were not identical with those of the letter of credit, and therefore they should not .have been admitted in evidence. The examination as to some of these, which were apparently not performed by the Nanyo Company, was prejudicial to the plaintiff. In effect, the trial was on the contract of sale, not the letter of credit, and this gave the defendant bank the benefit of defenses to which it was not entitled in this case.

The new trial was granted, in order to submit to the jury the question of whether or not the Bank of Taiwan was a bona fide holder of the draft, as required by the statement on the side of the letter of credit, but at the retrial the issue was not confined to this question, and irrelevant and prejudicial evidence was admitted. But, notwithstanding this fact, was it proper to submit this question to the jury? When the draft, bill of lading, and other documents were presented to the defendant bank for payment, it refused to pay on the single ground that "our letter of credit  *  *  *  calls for bills of lading to be dated during September or October, 1920, in an Oriental port. Our customer states that the date of the bills of lading, which are returned herewith to you, does not correspond with the officially recorded movements of the vessel. The Tajima Maru was not in Yokohama until after October 31st; therefore this is not October shipment as per letter of credit stipulation."

[2] By formally placing its refusal to pay on one ground, the defendant must be held to have waived all others. That the plaintiff was not a bona fide holder for value was not mentioned in connection with the ground on which defendant refused to pay. It has long been settled that, "where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration.  *  *  *  He is estopped from doing it by a settled principle of law." Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693. This rule of law is followed in the New York and Pennsylvania state courts and in the federal courts of this circuit. Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810; Honesdale Ice Co. v. Lake Lodore Improvement Co., 232 Pa. 293, 81 Atl. 306; Second National Bank of Allegheny v. Lash Corporation (C. C. A.) 299 Fed. 371.

[3, 4] The defense that plaintiff was not a bona fide holder of the draft for value was therefore not available on the trial. The bills of lading were dated October 30, 1920, and so complied with the letter of credit. That the date of the bills of lading did not truthfully represent the date of the beginning of actual transportation would be a defense, if it can constitute a defense, if, and only if, the plaintiff knew that fact when it acquired the draft. It was testified by those who were in a position to be in-

formed, and who doubtless were informed, that the plaintiff did not know that the bills were dated incorrectly, if they were so dated, and this testimony was nowhere contradicted. The defendant thus failed to establish the defense on which it refused to pay the draft, which was the only defense open to it.

[5] The letter of credit required the "bills of lading to be dated during September or October, 1920, in an Oriental port, for shipment to Philadelphia." The bills of lading complied with this provision. Shipment, "as used in a contract providing that shipments are to be made on a certain day, means merely the delivery of the goods to the transportation company, and not that the goods were to be transported at such date." Clark v. Lindsay, 19 Mont. 1, 47 Pac. 102, 103, 61 Am. St. Rep. 479; Caulkins v. Hellman, 47 N. Y. 449, 452, 7 Am. Rep. 461; Ledon v. Havemeyer, 121 N. Y. 179, 24 N. E. 297, 8 L. R. A. 245; Schmertz v. Dwyer, 53 Pa. 335; Stubbs v. Lund, 7 Mass. 453, 5 Am. Dec. 63. The word "shipment" did not mean the clearance of the vessel, for there is nothing to indicate that the seller was to have or exercise any control over the clearance of the vessel on which the merchandise was to be transported. Consequently, delivery of the copra to the transportation company for transportation on or before October 31, 1920, was a compliance with the provision in the letter of credit. We have not been referred to any evidence establishing that the copra was not delivered to the transportation company on the day the bills of lading were dated. A "bill of lading is in substance a written acknowledgment by the master or owner that he has received such goods as it describes for the voyage stated, to be carried on the terms stated, and delivered to the persons specified in the bill." 36 Cyc. 211. The bills of lading were issued in the regular course of business, and are presumptively true, and in the absence of evidence to the contrary we assume that the merchandise was delivered to the transportation company on the date they bear. There is, therefore, no evidence that the bills of lading on the specific ground on which payment was refused did not comply with the letter of credit, although actual transportation might not have started on the very day the copra was delivered to the transportation company.

The judgment of the District Court is reversed, and a new trial granted.